NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**BERKELEY*IEOR, DBA B*IEOR,**
*Plaintiff-Appellant*

**v.**

**W.W. GRAINGER INC., DHL EXPRESS (USA), DANZAS CORP., DBA DHL GLOBAL FORWARDING, AIR EXPRESS INTERNATIONAL USA, INC., DBA DHL GLOBAL FORWARDING,**
*Defendants-Appellees*

**TERADATA OPERATIONS, INC.,**
*Defendant-Cross-Appellant*

---

2024-2353, 2025-1009

---

Appeals from the United States District Court for the Northern District of Illinois in Nos. 0:24-cv-02606, 1:17-cv-07472, Judge Charles P. Kocoras.

---

Decided: September 21, 2026

---

MEREDITH LEIGH MARTIN ADDY, AddyHart P.C., Atlanta, GA, argued for plaintiff-appellant. Also represented by CHARLES A. PANNELL, III; BENJAMIN CAPPEL, Chicago, IL; WILLIAM CORY SPENCE, SpencePC, Chicago, IL.

KALPESH SHAH, Benesch Friedlander Coplan & Aronoff LLP, Chicago, IL, argued for defendants-appellees and defendant-cross-appellant. Also represented by SAMUEL RUGGIO; CHARANJIT BRAHMA, San Francisco, CA.

---

Before DYK and REYNA, *Circuit Judges*, and BISSOON, *Chief District Judge.*[1]

REYNA, *Circuit Judge.*

This is a cross-appeal from the United States District Court for the Northern District of Illinois, concerning (1) the district court's order staying and severing four counts of a five-count complaint, with each of Counts I–IV alleging direct infringement, (2) summary judgment of patent eligibility, (3) summary judgment of no indirect infringement under the fifth count, and (4) subsequent dismissal of Counts I–IV in light of the summary judgment of no indirect infringement under Count V.

Because we hold that the asserted claims are patent ineligible, we reverse the summary judgment of eligibility and affirm the judgment for Counts I–V on the alternative ground of patent ineligibility.

BACKGROUND

Appellant Berkeley*IEOR, dba B*IEOR ("Berkeley") owns U.S. Patent Nos. 7,596,521 ("the '521 patent"), 7,882,137 ("the '137 patent"), and 8,612,316 ("the '316 patent"), which claim methods for calculating object level profitability.

---

[1] Honorable Cathy Bissoon, Chief District Judge, United States District Court for the Western District of Pennsylvania, sitting by designation.

In October 2017, Berkeley sued cross-appellant Teradata Operations, Inc. ("Teradata") and appellee W.W. Grainger, Inc. ("Grainger") in the United States District Court for the Northern District of Illinois for infringement of claims 1–4 of the '521 patent, claims 1 and 2 of the '137 patent, and claims 1 and 2 of the '316 patent ("Asserted Claims"). J.A. 248–69. Berkeley's operative complaint, its second amended complaint, was filed in March 2018, alleging five counts of infringement. J.A. 363–419. Count I asserted direct infringement of the Asserted Claims under 35 U.S.C. § 271(a) against Grainger. J.A. 375–82. Counts II–IV alleged direct infringement of the Asserted Claims under "35 U.S.C. § 271(a) and/or (g)" against, respectively, DHL Express (USA), Inc. ("DHL"), Danzas Corp. ("Danzas"), and Air Express International USA, Inc. ("Air Express") (collectively, with Grainger, the "Customer Defendants"). J.A. 382–413. Count V alleged indirect infringement by Teradata of the Asserted Claims. J.A. 414–18.

On April 19, 2018, the Customer Defendants each moved to, respectively, sever and stay Counts I–IV, arguing Teradata is the real party in interest and the Customer Defendants' participation in the case was peripheral. J.A. 568–69 (Grainger); J.A. 588–92 (DHL); J.A. 614–18 (Danzas and Air Express).[2] DHL, Danzas, and Air Express also moved to dismiss Counts II–IV for failure to state a claim under Fed. R. Civ. P. 12(b)(6) as to alleged violations of 35 U.S.C § 271(g), arguing that this provision did not apply to software patents that only result in the creation of intangible information, like those at issue here. *See, e.g.*, J.A. 583; *see also* J.A. 571–619.

On March 7, 2019, the district court severed and stayed Counts I–IV under the "customer-suit exception" ("Sever

---

[2] Teradata also moved to sever and stay Counts I–IV. J.A. 594–97.

and Stay Order"). J.A. 100; J.A. 106. The district court also granted the motion to dismiss Counts II–IV as to any alleged violations of 35 U.S.C § 271(g), leaving these counts in place as to alleged violations of 35 U.S.C § 271(a). J.A. 102–06.

Several years later, Berkeley moved to vacate the Sever and Stay Order. J.A. 6566–80. The magistrate judge recommended that the motion be denied. J.A. 64–82. The district court judge agreed and denied the motion. J.A. 57–82.

Berkeley also moved for summary judgment that the Asserted Claims are patent eligible under 35 U.S.C. § 101. J.A. 5120–39; *see also* J.A. 28. Teradata cross-moved for summary judgment of patent ineligibility and that, alternatively, there is no indirect infringement under Count V. J.A. 6857–76; *see also* J.A. 28.

On March 7, 2024, the district court granted Berkeley's motion for summary judgment upon determining that the Asserted Claims were patent eligible. J.A. 27–56. The district court determined, and the parties agreed, that claim 1 of the '521 patent was representative of the Asserted Claims for purposes of patent eligibility. J.A. 28. Claim 1 recites:

> 1. A process for determining object level profitability in a computer, comprising the steps of:
>
> [1a] providing a relational database management system operable in association with a computer;
>
> [1b] preparing information to be accessed electronically through the relational database management system;
>
> [1c] establishing, in the relational database, rules for processing the prepared information;

> [1d] using the relational database management system to independently calculate at least one marginal value of profit for each object being measured using the established rules as applied to a selected set of prepared information;
>
> [1e] using the relational database management system to calculate a fully absorbed profit adjustment value for each object being measured; and
>
> [1f] combining the at least one marginal value of profit and the fully absorbed profit adjustment value to create a measure for object level profitability.

J.A. 134–35, 30:53–31:3.[3]

At step one of the patent eligibility analysis, the district court determined that claim 1 was directed to the abstract idea of "calculating profitability." J.A. 42. At step two, the district court determined that limitation [1d] contained the following inventive concept, and thus, was patent eligible: "[a] claimed unconventional combination [that] improves the functioning and operation of the computer itself by performing *parallel computations* in a faster amount of time." J.A. 50.[4] (emphasis added).

Relevant to this appeal, the district court rejected Teradata's argument that parallel computations, which the parties also refer to as "parallel processing," could not be the inventive concept that saved claim 1 because limitation [1d] did not require the claimed "relational database management system" ("RDBMS") to parallel process, i.e.,

---

[3] The claim limitation numbering reflects the same numbering used by the district court below.

[4] Having determined that the asserted claims were patent eligible, the district court denied Teradata's motion for summary judgment of patent ineligibility. J.A. 56.

process simultaneously, its calculations. J.A. 46–48. Teradata argued that limitation [1d] did not require parallel processing based on the district court's broad construction of "independently calculate" within limitation [1d]. J.A. 46–47. The district court agreed that its construction of "independently calculate," which was originally proffered by Berkeley, did not require parallel processing of calculations but would allow for sequential calculations or no calculations at all. J.A. 46–47 ("[A]lthough the patented invention describes performing the independent calculations simultaneously in an embodiment, there is no necessity to do so, and no such limitation is recited. The claims intentionally provide direction to perform the independent calculations simultaneously, sequentially, or if necessary, not perform some of them at all."). However, the district court disagreed with Teradata that parallel processing could not constitute an inventive concept. The district court noted that "[j]ust because the Asserted Patents do not 'require' parallel processing does not mean that they do not provide for parallel processing." J.A. 47.

The district court also granted summary judgment of no indirect infringement under Count V. J.A. 56. Following this, the Customer Defendants jointly moved to dismiss Count I and the remainder of Counts II–IV with prejudice, which the district court granted. J.A. 12; J.A. 13720–36; *see also* J.A. 13724, n.1.

Berkeley appeals the district court's (1) dismissal under Rule 12(b)(6) of Counts II–IV as to the alleged violations of 35 U.S.C. § 271(g), (2) Sever and Stay Order, (3) judgment of no indirect infringement by Teradata under Count V, and (4) dismissal with prejudice of Count I and the remainder of Counts II–IV concerning allegations of 35 U.S.C. § 271(a).

Teradata cross-appeals the district court's summary judgment of patent eligibility, arguing that judgment under Counts I–V should be affirmed on the alternative ground of patent ineligibility.

We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

For reasons noted below, we determine that the Asserted Claims are patent ineligible and thus reverse the grant of summary judgment of patent eligibility, and we affirm the judgment of Counts I–V in favor of Teradata and the Customer Defendants on the alternative basis that the asserted claims are patent ineligible. We thus do not reach Berkeley's appeal.

This court reviews decisions on motions for summary judgment under the law of the regional circuit, in this case, the Seventh Circuit. *MobileMedia Ideas LLC v. Apple Inc.*, 780 F.3d 1159, 1164 (Fed. Cir. 2015) (citation omitted). The Seventh Circuit reviews motions for summary judgment de novo. *Pain Ctr. of SE Indiana LLC v. Origin Healthcare Sols. LLC*, 893 F.3d 454, 459 (7th Cir. 2018). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Patent eligibility under 35 U.S.C. § 101 is ultimately an issue of law we review de novo." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018). "The patent eligibility inquiry may contain underlying issues of fact." *Id.* For example, in the context of discussing step two of the *Alice* test, we have noted that "not every § 101 determination contains genuine disputes over the underlying facts material to the § 101 inquiry," such that patent eligibility can be "resolved on motions to dismiss or summary judgment." *Id.* at 1368.

Section 101 of the Patent Act states, "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court has determined that certain exceptions to the requirements of § 101 exist such that "[l]aws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (citation omitted). The patentability exception for abstract ideas, at issue in this case, embodies "the longstanding rule that [a]n idea of itself is not patentable." *Id.* at 218 (citation modified).

To determine whether patent claims are directed to patent ineligible subject matter, the Supreme Court has developed a two-step test commonly known as the "*Alice*" test. Under *Alice* step one, we consider whether the claims at issue are directed to, in this case, an abstract idea. *Id.* at 217. If the claims are not directed to an abstract idea, the *Alice* inquiry ends. *Id.* If we conclude that the claims are directed to patent ineligible subject matter, the inquiry continues to *Alice* step two, where we ask whether the claims recite something "significantly more" than the abstract idea itself. *Id.* at 217–18. Specifically, the court determines "whether the claim elements, individually and as an ordered combination, contain an inventive concept, which is more than merely implementing an abstract idea using well-understood, routine, and conventional activities previously known to the industry." *Chewy, Inc. v. Int'l Bus. Machs. Corp.*, 94 F.4th 1354, 1365 (Fed. Cir. 2024) (citation modified).

I.

At step one of *Alice*, the district court determined that claim 1 of the '521 patent is directed to an abstract idea of "calculating profitability." J.A. 42. We agree. Claim 1 recites a "process for determining object level profitability in

a computer," comprising the steps of "providing" a database, "preparing information," "establishing, in the relational database, rules for processing the prepared information," "using" the database to "independently calculate at least one marginal value of profit for each object" by applying the established rules to the prepared information, "using" the database "to calculate a fully absorbed profit adjustment value," and "combining the at least one marginal value of profit and the fully absorbed profit adjustment value to create a measure for object level profitability." J.A. 134, 30:53–31:3.

We review claim 1's "character as a whole." *Two-Way Media Ltd. v. Comcast Cable Comms.*, 874 F.3d 1329, 1337 (Fed. Cir. 2017). This claim is directed to the idea of performing mathematical calculations to determine profitability using a computer to do so. The idea of performing calculations based on "abstract processes of collecting and analyzing information, without more," is an abstract idea. *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016); *see also SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018) (concluding that "selecting certain information, analyzing it using mathematical techniques, and reporting or displaying the results of the analysis" was an abstract idea). Nor does it matter that this calculation is performed faster on a computer. This does not save this claim from abstraction. *See GoTV Streaming, LLC v. Netflix, Inc.*, 166 F.4th 1053, 1064 (Fed. Cir. 2026) ("[W]e have made clear that an abstract idea remains an abstract idea even when narrowed—*e.g.*, by subject matter—to a particular use or environment."). Based on our conclusion that claim 1 is directed to an abstract idea, we next review the claim under step two of *Alice.*

## II.

At step two of *Alice,* the district court determined that limitation [1d] of claim 1 of the '521 patent contained an

inventive concept of a "claimed unconventional combination [that] improves the functioning and operation of the computer itself by performing parallel computations in a faster amount of time." J.A. 50 (emphasis added). In addition, the district court determined that limitation [1d] allowed for, but did not require, "parallel computations," also referred to by the parties as "parallel processing." *See* J.A. 45–51.

Teradata argues that the district court legally erred when concluding that parallel processing constitutes an inventive concept even though claim 1 does not require the RDBMS to parallel process calculations. Cross-Appellant Br. 52–57. According to Teradata, "[e]ven if the specification describes a particular embodiment of the invention as inventive," as was the case here, "that description is irrelevant to the *Alice* Step Two analysis where the claim language . . . would not require those details." Cross-Appellant Br. 55 (citation modified). Thus, according to Teradata, because limitation [1d] does not require the RDBMS to parallel process calculations, parallel processing cannot supply the inventive concept at step two as a matter of law. Cross-Appellant Br. 53–57. We agree.

At step two of *Alice*, if a claim is so broad that it can be practiced without the alleged inventive concept, i.e., the alleged inventive concept is not required by the claim, then the claim cannot be "significantly more" than the abstract idea itself and fails at step two. *See Alice*, 573 U.S. at 217–18. Put another way, when the invention *as claimed* does not necessitate the alleged "improvement in . . . [the] technology or technical field," then such alleged improvement cannot save the claim at step two. *Id.* at 225; *see also Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1326 (Fed. Cir. 2016) (concluding that the alleged problem solved by the invention, i.e., asymmetry of information between borrowers and lenders, did not save the claim at step two when such asymmetry of information, such as "conflicts-of-interest and predatory lending [were]

still possible when practicing the claim[]"). This principle aligns with step one of *Alice,* where claims cannot be "directed to a technological improvement when nothing in the claims requires the steps necessary to make the improvement." *Trs. of Columbia Univ. in City of New York v. Gen Digital Inc.*, 169 F.4th 1320, 1331 (Fed. Cir. 2026) (holding that "[b]ecause the claims do not require selective emulation, selective emulation cannot prevent the claims from constituting an abstract idea"); *see also GoTV Streaming*, 166 F.4th at 1061 ("[O]nly features that are claimed, not unclaimed details that appear in the specification, can supply something beyond . . . an abstract idea and sufficient to render the claim eligible. . . .").

Here, the parties and the district court agree that the alleged inventive concept of parallel processing is not required by the claim such that a system that does not perform calculations in parallel could still fall within the scope of the claim. *See* Cross-Appellant Br. 53; Oral Arg. at 25:55–26:01 (appellant's counsel conceding that parallel processing "[is] not a claim requirement" of claim 1 of the '521 patent); J.A. 47 (noting that "the Asserted Patents do not 'require' parallel processing"). Thus, it was legal error for the district court to nonetheless conclude that parallel processing supplied the inventive concept for claim 1 of the '521 patent.

Berkeley argued below and on appeal that limitation [1d] recites an additional inventive concept separate from parallel processing that would save the claim at step two. *See* Appellant Response Br. 56; *see also* Oral arg. at 25:31–25:54, 26:05–26:15, 29:42–30:42. This inventive concept, according to Berkeley, is the RDBMS's ability to independently calculate "the marginal value of each object" inside of the RDBMS itself. Appellant Response Br. 56–57. Berkeley contrasts this with prior art "procedural-based software," which "requir[es] multiple computers to extract the data from the database and operate on it serially." Appellant Response Br. 58. We reject this argument because

it is directed to the same parallel processing concept discussed above.

As indicated by Berkeley's briefing on appeal, as well as its expert testimony below, the inventiveness of the RDBMS's ability to calculate "marginal value of profit" stems directly from the ability to "independently calculate" this profit inside of the RDBMS itself. *See* Appellant Response Br. 62–63. And the "independent calculations" of such profits inside of the RDBMS itself were allegedly inventive solely because this meant that the calculations could be done in parallel. *Id.* ("Berkeley's claimed unconventional arrangement, requiring *independent calculations* of 'marginal value of profit' . . . for each object being measured *made it possible for the RDBMS to process multiple profit independently of each other*, which was different from the prior art where the dependency on the prior calculations *required operation in sequence*." (emphases added)); *see also* J.A. 7299, 98:8–18 (Berkeley's expert testimony) (Q: "If a system didn't perform calculations in parallel . . . would it yield the speed and efficiency enhancements that you attribute to the claimed invention?" A: "My opinion is, no, it would not. Doing things sequentially is just going to take a longer period of time."); Oral Arg. at 32:10–32:28, 32:40–32:55. Here, Berkeley attempts, but fails, to identify an inventive concept in limitation [1d] that is separate from the concept of parallel processing.

In sum, because there is no genuine dispute of material fact that claim 1 of the '521 patent recites no inventive concept, this claim fails at step two of *Alice*.

## CONCLUSION

We have considered Berkeley's remaining arguments and find them unpersuasive. For the above reasons, we determine that the Asserted Claims are patent ineligible under 35 U.S.C. § 101. We thus reverse the grant of sum-

mary judgment of patent eligibility and affirm the judgment of Counts I–V in favor of the Customer Defendants and Teradata on the alternative ground of patent ineligibility.

**REVERSED-IN-PART AND AFFIRMED-IN-PART**

COSTS

Each party shall bear its own costs for this appeal and cross-appeal.